**United States District Court**
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7
8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   JOHN AVILA,
11             Plaintiff,                         No. C 12-01237 WHA
12      v.
13   WELLS FARGO BANK; WACHOVIA BANK,             **ORDER GRANTING**
     N.A.; NDEX WEST LLC; and all persons or      **IN PART AND DENYING**
14   entities unknown claiming any legal right, title,   **IN PART DEFENDANT'S**
     estate, lien or interest in the property described in   **MOTION TO DISMISS**
15   this complaint adverse to Plaintiff's title thereto;   **AND GRANTING**
     and DOES 1 through 25, inclusive,            **DEFENDANT'S REQUEST**
16                                                **FOR JUDICIAL NOTICE**
             Defendants.
17   _____/
18
19                          **INTRODUCTION**
20        In this wrongful-foreclosure action, defendant Wells Fargo moves to dismiss pursuant to
21   FRCP 12(b)(6).  For the reasons stated below, the motion to dismiss is **GRANTED IN PART** and
22   **DENIED IN PART**.  Defendant's request for judicial notice is **GRANTED**.
23                          **STATEMENT**
24        Plaintiff, who is represented by counsel, is an individual residing in Alameda County.
25   Defendants are the lender and beneficiary, Wells Fargo Bank, N.A., as successor in interest to
26   Wachovia Bank, N.A.; NDeX West, a Delaware limited liability corporation; and Does 1
27
28

1    through 25.  Defendant NDeX West, LLC was granted designation of non-monetary status

2    pursuant to the stipulation of both parties (Dkt. Nos. 19, 22).[1]

3           This action was filed in Alameda County Superior Court in February 2012 and

4    defendants subsequently removed the action to this district, pursuant to 28 U.S.C. 1332.

5    Defendant Wells Fargo filed a motion to dismiss in early April 2012, arguing that the action was

6    barred by res judicata and failed to state a claim.  Plaintiff subsequently filed the first amended

7    complaint alleging nine claims:  (1) set aside pending trustee sale based upon wrongful

8    foreclosure in violation of Civil Code Section 2923.5, (2) violation of Civil Code 2923.6, (3)

9    violation of RESPA, (4) breach of covenant of good faith and fair dealing, (5) Unfair and

10   Deceptive Business Act Practices ("UDAP"), (6) negligence, (7) negligent misrepresentation, (8)

11   preliminary and permanent injunction, and (9) quiet title.  Defendant Wells Fargo has filed a new

12   motion to dismiss for failure to state a claim.  As explained below, this order finds that plaintiff's

13   claims are not barred by res judicata, but that the second, fifth, seventh, and eighth claims must

14   be dismissed pursuant to FRCP 12(b)(6).

15          The following facts are taken from the first amended complaint.  In or about November

16   2005, plaintiff entered into a "Pick-A-Payment" adjustable rate mortgage, secured by a deed of

17   trust for $492,000, for the refinancing of two existing mortgages on his residence in Alameda

18   County (First Amd. Compl. ¶¶ 15–17).

19          The monthly mortgage payments increased in January of 2007 and 2008, and plaintiff

20   became unable to continue making the monthly payments.  In or about November 2008, plaintiff

21   sought a loan modification from World Savings Bank.[2]  Plaintiff's initial request was denied, but

22   he was eventually granted a modification in or about May 2009.  Plaintiff alleges his discussions

23

24          [1]  Wells Fargo claims NDeX West acted as its trustee, however, plaintiff alleges NDeX West was
25   never the trustee (see Br. 2; First Amd. Compl. ¶ 5).  The deed of trust listed World Savings Bank (now Wells
     Fargo) as the lender and beneficiary, and Golden West Savings Association Service Co. as the trustee (see id.,
26   Exh. A).

27          [2]  The complaint does not allege World Savings Bank's role in the instant action, but the joint case
     management statement indicates the proper name of defendant Wells Fargo, including its former names:  "Wells
28   Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. f/k/a Wachovia Mortgage FSB
     f/k/a World Savings Bank, FSB (erroneously sued as 'Wells Fargo Bank, A National Association, successor in
     interest to Wachovia Bank, N.A.')" (Dkt. No. 29).

with World Savings were that his modification would be under $1,900 per month, but the actual

terms were not as promised, and required monthly payments of $2,360.87 — nearly identical

to the terms of the original loan.  Plaintiff tendered two months of payments to Wells Fargo

under the modified terms, but Wells Fargo refused the payments.  Then, plaintiff spoke to

World Savings to continue to "pursue a loan modification to reinstate his loan."  Four months

later, the modification request was denied (*id.* ¶¶ 18–22).

   In January 2011, Wells Fargo, through NDeX West, recorded a notice of default on the

property that stated plaintiff's account was past due $26,700.  Plaintiff alleges that NDeX West's

filing of the notice of default was unlawful because NDeX West at no time has been the trustee

of the subject deed of trust; the terms of the deed of trust only allowed the lender to substitute

the trustee, and no party with the right to substitute the trustee did so as to NDeX West.

Furthermore, because only the "lender" (not a "beneficiary") can initiate a non-judicial

foreclosure pursuant to the deed of trust, the notice of default was fraudulent and misleading

in stating NDeX West was acting on behalf of the beneficiary Wells Fargo.  In April 2011,

a notice of trustee's sale was recorded which stated the estimated unpaid balance as $455,983,

and the trustee sale was scheduled for May 15, 2012 (*id.* ¶¶ 5, 24–25, 28).

   In sum, plaintiff alleges:

> From the initiation of Plaintiff's PICK-A-PAYMENT Loan,
> Defendant intended to deceive Plaintiff into giving up all equity
> in his Subject Property, and eventually his Subject Property, while
> leading Plaintiff to believe they were assisting Plaintiff by placing
> him in a great loan.  Defendants' deception continued when they
> supposedly gave Plaintiff a loan modification and then refused
> to accept his payments under the terms of the loan modification.
> Thereinafter they continually led Plaintiff to believe they were
> genuinely evaluating Plaintiff for a legitimate loan modification
> when that was not in fact the case and they were actually
> intentionally forcing his Subject Property into foreclosure.

Plaintiff also alleges that Wells Fargo never contacted him to assess his financial situation or

discuss alternatives to foreclosure, and that he initiated all contact with regard to loan

modification (*id.* ¶¶ 26–27).

   The following exhibits are appended to the first amended complaint:  (A) deed of trust

and truth-in-lending disclosure (TILDS) (collectively the "loan documents"); (B) estimate of

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   borrower's closing costs; (C) qualified written requests ("QWR") addressed to Wachovia and

2   to NDeX West; and (D) validation of debt notices also addressed to Wachovia and NDeX West.

3            Wells Fargo asserts several additional facts:

4            In May 2011, in violation of the terms of the deed of trust he had
             signed, plaintiff and his wife granted the property to themselves
5            and a third party, one Juan Francisco Aguirre, as joint tenants.
             RJN Exh. E.  Two days later, apparently to stall the foreclosure
6            proceedings on the Property, Aguirre filed for bankruptcy.  RJN
             Exh. F.

7   (Br. 3) (footnote omitted).  Thus, as of June 14, 2012, no foreclosure sale had taken place (Joint

8   Case Management Statement 2–3).  Wells Fargo also argues that plaintiff "cannot bring a lawsuit

9   based on his Pick-A-Payment loan because he is a member of a class of borrowers whose alleged

10  wrongs have already been addressed in a multi-district federal class action settlement that was

11  finalized in May 2011" (*see* Br. 1; *In re Wachovia Corporation "Pick-A-Payment" Mortgage*

12  *Marketing and Sales Practices Litigation*, No. 5:09-md-02015-JF, 2011 WL 1877630 (N.D. Cal.

13  May 17, 2011) (Fogel, J.).[3]

14           This order follows full briefing and a hearing.  Plaintiff's counsel appeared at the

15  hearing; defendants' counsel did not.

16

17

18

19  _____

20      [3] Wells Fargo requests judicial notice be taken of the following documents:  (1) deed of trust dated
    November 21, 2005, recorded on November 29, 2005 (appended to the first amended complaint as exhibit A);
    (2) "Adjustable Rate Mortgage Note: Pick-A-Payment Loan" signed November 21, 2005 (referenced at
21  paragraphs 16 and 26 of the first amended complaint); (3) notice of default and election to sell, recorded on
    January 28, 2011; (4) notice of trustee's sale, recorded on April 27, 2011; (5) a quitclaim deed recorded on
22  May 17, 2011; (6) a petition of chapter 13 bankruptcy, filed in the United States Bankruptcy Court, Central
    District of California, case number 2:11-bk-31638-NB on May 19, 2011; and (7) docket entries 207, 112, 157-2,
23  and 208 from *In re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing and Sales Practices
    Litigation*, case number 5:09-md-02015-JF, in the United States District Court for the Northern District of
24  California (RJN 3–4).  Plaintiff does not object.

25      Because defendant's exhibits A, C, D, E, and F are public records, the authenticity of which is capable
    of accurate and ready determination by sources whose accuracy cannot reasonably be questioned, pursuant to
26  Federal Rule of Evidence 201(b), defendants' request for judicial notice as to these exhibits is **GRANTED**.
    A document not appended to a complaint "may be incorporated by reference into a complaint if the plaintiff
27  refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v.
    Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Because plaintiff relies extensively on Exhibit B, the Pick-A-
28  Payment loan, for the basis of his claim, defendants' request for judicial notice as to Exhibit B is **GRANTED**.

4

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2      **1.      RES JUDICATA EFFECT OF CLASS ACTION SETTLEMENT.**

3          Wells Fargo argues that plaintiff's entire first amended complaint should be dismissed

4   without leave to amend because all of its claims are barred by res judicata.  The only indication

5   that plaintiff disagrees with this argument is a sentence in the case management statement that

6   "Avila contends that the allegations in his first amended complaint are not barred by the

7   principle of *res judicata*" (Dkt. No. 29 at 4).  He does not address res judicata in his opposition

8   brief.  Nevertheless, this order finds that res judicata does not bar plaintiff's claims.

9          The doctrine of res judicata, or claim preclusion, provides that a final judgment on the

10   merits bars further claims by the parties or their privies based on the same claims.  *Tahoe-Sierra*

11   *Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir.

12   2003).  Claim preclusion applies when there is (1) an identity of claims, (2) a final judgment

13   on the merits and (3) identity or privity between the parties.  It is immaterial whether the claims

14   asserted subsequent to the judgment were actually pursued in the action that led to the judgment;

15   rather, the relevant inquiry is whether they could have been brought.  Newly articulated claims

16   based on the same "transactional nucleus of facts" may still be subject to a res judicata finding

17   if the claims could have been brought in the earlier action.  *Id.* at 1078.

18          The prior judgment at issue is the multi-district class-action settlement in *In re Wachovia*

19   *Corporation "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation*,

20   No. 5:09-md-02015-JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011) (Fogel, J.).  The lawsuit

21   included all persons who entered into Wachovia Pick-A-Payment loans between August 1, 2003,

22   and December 31, 2008.  Three classes were certified:  (1) persons who had entered into but no

23   longer held the loans at issue (Class A), (2) persons who still held the loans but are not in default

24   (Class B), and (3) persons who still held the loans but were in default (Class C).  *Id.* at *1.

25          The Pick-A-Payment loans "permitted borrowers to select and make a minimum payment

26   amount for a limited time. . . . When a payment was insufficient to pay the interest owed,

27

28

United States District Court
For the Northern District of California

1   unpaid interest was added to the loan balance and the outstanding loan balance increased." *Ibid.*

2   The plaintiffs' claims alleged that:

3           [T]he loans violated the federal Truth-in-Lending Act ("TILA"),
            15 U.S.C. § 1601 *et seq.*, and various state laws, because the
4           relevant loan documents failed to make adequate disclosures
            regarding the certainty of negative amortization, the actual
5           payment schedules, the interest rates on which these schedules
            were based, and the full terms of the parties' legal obligations.

6
7   *Ibid.* The approved settlement provided for $50 million to be distributed to Class A members

    who submitted claim forms and Class B and C members who did not opt out. *Ibid.*
8
    The settlement also provided for Class C and certain Class B members to be considered for
9
    loan-modification programs (the federal HAMP or defendant's MAP2R program), and if not
10
    eligible for loan modification, qualified members could receive a $1,500 incentive payment.
11
    *Id.* at *2.
12
13          Defendants assert that plaintiff is bound by the Pick-A-Payment judgment (*see id.* at *3;

14  RJN Exh. I; Br. 7, 9). Plaintiff filed a declaration as requested by the Court, indicating that in

15  or about 2010, he received a postcard notification of a class action lawsuit against Wachovia.

16  He recalls that it stated a person would have to "opt out" in order to not be a part of the lawsuit,

    but "did not understand what that information meant and did nothing further." He later received
17
    a check for approximately $100 that stated it was in regard to the Wachovia lawsuit. He also
18
    understands there was an opportunity for some parties to request and/or receive a mortgage
19
    modification, but he did not participate and no one from Wachovia or any attorney approached
20
    him about modifying his mortgage at that time (Dkt. No. 38).
21
22          No contention is made that due process requirements were unsatisfied as to plaintiff.

23  He received "notice plus an opportunity to be heard and participate in the litigation,"

    including the opportunity to opt out from the class action; therefore, plaintiff is bound by the
24
    Pick-A-Payment settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).
25
26          Although plaintiff is bound by the settlement, his current claims are not barred

    because they could not have been raised in the class action. The Pick-A-Payment lawsuit
27
    concerned claims arising out of the failure to make certain disclosures during *origination* of
28
    Pick-A-Payment loans, particularly in relation to negative amortization, payment schedules,

1    and interest rates.  Here, plaintiff's claims arise out of his later negotiations with defendants

2    regarding his loan-modification requests, defendants' conduct during the foreclosure process,

3    and defendants' failure to respond to his written requests, all of which occurred several years

4    after origination of plaintiff's loan.  Importantly, plaintiff's original claims for fraud in

5    origination of the loan, violation of TILA, rescission, and predatory lending — which

6    would likely all be barred by res judicata — were dropped from the amended complaint.

7    The res judicata effect of the Pick-A-Payment judgment on each remaining claim is considered

8    in turn as follows.

9        Plaintiff's first claim, brought against all defendants for wrongful foreclosure in violation

10   of California Civil Code Section 2923.5, rests on the allegation that defendants initiated the

11   foreclosure without fulfilling the statutory duty to attempt to contact plaintiff by certified mail

12   and by telephone prior to recording the notice of default.  This claim does not arise out of the

13   loan-origination disclosures at issue in the Pick-A-Payment class action, and is not barred by

14   res judicata.

15       Plaintiff's second claim, for violation of California Civil Code Section 2923.6, asserts

16   that defendant Wells Fargo unlawfully initiated the foreclosure prior to making a good faith

17   effort to contact plaintiff and pursue a loan modification.  As discussed below, this claim is

18   dismissed because Section 2923.6 does not create a private right of action, therefore, this order

19   need not determine the res judicata effect on this claim.

20       Plaintiff's third claim, brought against all defendants for violation of RESPA, arises out

21   of defendants' failure to respond to written requests for information about the servicing of the

22   loan.  Because these requests were made in November and December 2011, over six months

23   after the Pick-A-Payment judgment, the claims arising out of defendants' failure to respond

24   could not have been brought as part of the class action and thus are not barred.

25       Plaintiff's fourth claim, for breach of implied covenant of good faith and fair dealing,

26   relies on defendant Wells Fargo's conduct during loan-modification negotiations during 2008

27   through 2010.  This claim concerns conduct separate from origination disclosures and thus is

28   not barred.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Plaintiff's fifth claim, against Wells Fargo for UDAP, is dismissed because, as discussed

2   below, it appears to be founded on 15 U.S.C. 45(a)(1), which does not create a private cause of

3   action.  This order need not determine the res judicata effect on this claim.

4   Plaintiff's sixth and seventh claims, for negligence and negligent misrepresentation, arise

5   out of defendant Wells Fargo's conduct in negotiating plaintiff's loan modification, and as such,

6   are not part of the same transactional nucleus of facts as the Pick-A-Payment class action.

7   Plaintiff's eighth claim, for injunctive relief against all defendants, is surplusage because

8   injunctive relief is a remedy dependent on the other underlying claims.  The res judicata effect

9   on this claim need not be considered.  It is premature to decide whether injunctive relief would

10  be appropriate.

11  Plaintiff's ninth claim, for quiet title against all defendants, arises out of his allegations

12  that the foreclosure sale proceedings are invalid and defendants have no right to title or interest

13  in the property.  Because this claim does not arise out of the loan origination, it is not barred by

14  res judicata.

15  While plaintiff's underlying need to pursue a loan modification may stem in part

16  from the origination of his loan and its payment terms, defendants' conduct in relation to

17  loan-modification negotiations is not part of the same transactional nucleus of facts.

18  Defendants' alleged unlawful procedure in initiating the foreclosure and misrepresentations

19  in loan-modification negotiations could not have been brought as part of the class action.

20  Furthermore, plaintiff's claims arising out of the notice of default and failures to respond to

21  the QWRs all arose after the Pick-A-Payment settlement class had been provisionally certified

22  and the settlement agreement had been granted preliminary approval in December 2010.

23  *See In re Wachovia Corp. Pick-a-Payment Mortg. Mktg. & Sales Practice Litig.*,

24  M:09-CV-2015-JF, 2010 WL 5559767 (N.D. Cal. Dec. 16, 2010).   Therefore, plaintiff could

25  not have had an opportunity to litigate those claims as part of the class action.  In sum, plaintiff's

26  claims are not barred by res judicata and must be assessed individually for failure to state a

27  claim.

28

**United States District Court**
For the Northern District of California

2.   **FAILURE TO STATE A CLAIM.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

**A.   Set Aside Pending Trustee Sale Based Upon Wrongful Foreclosure in Violation Of Civil Code Section 2923.5.**

Plaintiff's first claim alleges all defendants violated California Civil Code Section 2923.5 by initiating a non-judicial foreclosure without first contacting plaintiff, and that plaintiff was not properly notified of the pending foreclosure on his property (First Amd. Compl. ¶¶ 44–61).

Section 2923.5 states that "[a] mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made . . . or 30 days after satisfying . . . due diligence requirements."

> A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

CAL. CIV. CODE § 2923.5(a)(2).

"Due diligence" in attempting to contact the borrower requires: (1) "sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency;" (2) "attempting to contact the borrower by

1    telephone at least three times at different hours and on different days" (an automated system may

2    be used if it connects the borrower to a live representative when answered, and the telephone

3    call requirements are satisfied if the lender determines that the borrower's phone number has

4    been disconnected); (3) sending a certified letter, with return receipt requested, if the borrower

5    does not respond within two weeks of the telephone calls; (4) providing a toll-free telephone

6    number that will provide access to a live representative during business hours; and (5) posting a

7    "prominent link on the homepage of its Internet Web site" to information about avoiding

8    foreclosure. CAL. CIV. CODE § 2923.5(g).

9        As an initial matter, "the remedy for noncompliance [with Section 2923.5] is a simple

10   postponement of the foreclosure sale, nothing more." *Mabry v. Superior Court*, 185 Cal. App.

11   4th 208, 214 (2010). Section 2923.5 provides that the lender must notify the borrower and help

12   her assess her options for modification but need not automatically provide modification. *Id.* at

13   214.

14       Plaintiff alleges that defendants (1) did not send him a first-class letter with a toll-free

15   number for HUD, (2) did not attempt to contact him by telephone at least three times, at three

16   hours, and on different days, and (3) did not send a certified letter with return receipt requested

17   prior to filing the notice of default (First Amd. Compl. ¶¶ 49–51).

18       Wells Fargo argues that the notice of default included a Section 2923.5 declaration that

19   Wells Fargo had tried with due diligence to contact plaintiff, and also that because plaintiff

20   initiated conversations with World Savings (now Wells Fargo), the statutory duties have been

21   fulfilled (Br. 10–12). The fact that defendant pursued loan modification with World Savings

22   does not mean that defendants complied with Section 2923.5. Plaintiff allegedly initiated

23   contact with defendants to request loan modification starting in 2008, three years prior to the

24   notice of default, and it is unclear whether those conversations communicated all of the

25   information required by Section 2923.5. Furthermore, the declaration attached to the notice of

26   default is not conclusive as it is contradicted by plaintiff's allegations in the complaint.

27       The complaint states sufficient factual allegations to create a plausible inference that the

28   defendants did not fully comply with the requirements of Section 2923.5. The relief that might

United States District Court
For the Northern District of California

10

flow from any such violation need not be decided now.  Defendant's motion as to plaintiff's

Section 2923.5 claim is **DENIED**.

### B.      Violation of Civil Code Section 2923.6.

Plaintiff's second claim alleges defendant Wells Fargo violated California Civil Code

Section 2923.6, which provides:

> (a)  The legislature finds and declares that any duty servicers may
> have to maximize net present value under their pooling and
> servicing agreement is owed to all parties in a loan pool, not to any
> particular parties, and that a servicer acts in the best interests of all
> parties if it agrees to or implements a loan modification or workout
> plan for which both of the following apply:
>
> > (1)  The loan is in payment default, or payment default is
> > reasonably foreseeable.
> >
> > (2)  Anticipated recovery under the loan modification or
> > workout plan exceeds the anticipated recovery through
> > foreclosure on a net present value basis.
>
> (b)  It is the intent of the Legislature that the mortgagee,
> beneficiary, or authorized agent offer the borrower a loan
> modification or workout plan if such a modification is consistent
> with its contractual or other authority.

Section 2923.6 does not operate substantively to provide a private right of action.

Although our court of appeals has not yet weighed in on this issue, district courts in this circuit

have found "that the legislative history, intent, and plain language of [Section] 2923.6 makes

it clear that servicers are not obligated to offer loan modifications to borrowers," and it does not

provide a private claim for relief to borrowers.  *Bulaoro v. Oro Real, Inc.*, 2011 WL 6372458,

at *9 (N.D. Cal. Dec. 20, 2011) (Alsup, J.) (quoting *Dizon v. Cal. Empire Bancorp, Inc.*, 2009

WL 3770695, at *5 (C.D. Cal. Nov. 9, 2009) (Snyder, J.)).  Plaintiff's argument that there

"should" be an implied private right of action is not persuasive (Opp. 4).  Because the statute

does not provide a private claim, plaintiff's claim for relief under Section 2923.6 necessarily

fails and accordingly, defendant's motion to dismiss this claim without leave to amend is

**GRANTED**.

### C.      Violation of RESPA.

Plaintiff's third claim alleges defendants violated RESPA by not responding to plaintiff's

QWR and validation of debt notice ("VOD") (First Amd. Compl. ¶¶ 80–98).

11

United States District Court

For the Northern District of California

1    Section 2605 under RESPA governs claims regarding written requests.  12 U.S.C. 2605.

2  Section 2605(e)(1) specifically requires servicers of federally related mortgage loans to respond

3  to "qualified written requests" from borrowers seeking information relating to loan servicing.

4  Servicers' failure to provide a response is actionable under Section 2605(f).[4]

5    Wells Fargo first argues that RESPA does not require defendants to respond to a VOD,

6  and that if plaintiff is attempting to allege a violation under FDCPA, 15 U.S.C. 1692g, that claim

7  necessarily fails because "'the activity of foreclosing on [a] property pursuant to a deed of trust

8  is not the collection of a debt within the meaning of the' FDCPA."  (Br. 14, quoting *Gamboa v.*

9  *Trustee Corps*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) (Conti, J.)).

10  Our court of appeals has not addressed the issue of whether foreclosure constitutes "debt

11  collection" under the FDCPA; however, the majority view in this district is that foreclosure is

12  not "debt collection" within the meaning of the statute because it is not an attempt to collect

13  funds from the debtor.  *See Tapang v. Wells Fargo Bank, N.A.*, No. 12-CV-02183-LHK, 2012

14  WL 1894273, at *3 (N.D. Cal. May 23, 2012) (Koh, J.) (citing cases).  Plaintiff does not allege

15  that defendants' debt-collection activities exceeded the normal scope of the foreclosure process.

16  Insofar as plaintiff's third claim attempts to allege a violation of RESPA or FDCPA arising from

17  the VOD, defendants' motion to dismiss is **GRANTED**.

18    Wells Fargo's second argument against the RESPA claim is that the correspondence

19  from plaintiff does not constitute a valid QWR because it "did not identify any alleged servicing

20  errors or give any specifics about the reasons he believed the account was in error," and because

21  it requested information related to the origination rather than the servicing of the loan (Br.

22  15–16).

23    RESPA defines a QWR as:

24    a written correspondence, other than notice on a payment coupon
      or other payment medium supplied by the servicer, that —

25
26    (i)  includes, or otherwise enables the servicer to identify, the name
      and account of the borrower; and

27

28    [4]  The recent RESPA decision by the Supreme Court does not pertain to Section 2605(e) and the duty
of the loan servicer to respond to borrower inquiries at issue here.  *Freeman v. Quicken Loans*, 132 S. Ct. 2034
(2012).

12

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. 2605(e)(1)(B).

RESPA defines the term "servicer" to mean "the person responsible for servicing of a loan."

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. 2605(i)(3)

That plaintiff's letter sufficiently stated the name and account of the borrower is not in dispute. Plaintiff also alleges that Wells Fargo was the servicer of the loan (First Amd. Compl. ¶ 82). The complaint asserts the RESPA claim "against defendants" but does not specify which defendants. Because the complaint alleges NDeX West has never been the trustee of the subject deed of trust, and does not allege NDeX West was ever a servicer of the loan, it is not a proper defendant under this claim, thus, this claim is construed as against Wells Fargo alone (*see id.* ¶ 5).

As to the scope of the request, Wells Fargo is correct that the information numbered 1–10 in the QWR pertained to origination of the loan and was not the appropriate subject of a QWR, because Section 2605(e)(1)(A) requires acknowledgment of a QWR only when it requests "information relating to the *servicing* of such loan." *See Brosnan v. Countrywide Home Loans Inc.*, 09-cv-00542-WHA, 2009 U.S. Dist. LEXIS 92480, at *11–12 (N.D. Cal. Oct. 5, 2009) (Alsup, J.). Nevertheless, the QWR proceeded to state: "I suspect violations of the RESPA or of TILA in the processing of certain fees associated with my Loan and Loan Documentation. Can you please give me a specific breakdown of all the fees and an explanation of why they were incurred?" (*Id.* Exh. C). RESPA requires a QWR give either the reasons the borrower thinks the account is in error *or* sufficient detail regarding other information sought — it does not require both. *See Escano v. Aurora Loan Services, LLC*, No. C 11-6720-MEJ, 2012 WL 2061587, at *3 (N.D. Cal. Jun. 7, 2012) (James, J.). While plaintiff's letter was admittedly

13

United States District Court

For the Northern District of California

1   vague as to the reasons for his belief the account was in error, stating only his suspicion of

2   RESPA and TILA violations without describing the reasons for that suspicion, his request for "a

3   specific breakdown of all the fees and an explanation of why they were incurred" provided

4   "sufficient detail" as to the information sought by plaintiff (*see* First Amd. Compl., Exh C).

5   That the QWR requested information outside the scope of RESPA does not invalidate the entire

6   request.  Wachovia was not required to respond to the request for origination-related documents,

7   but it was required to respond to the request for the fee breakdown and explanation.  For these

8   reasons, defendant's motion to dismiss plaintiff's third claim for violation of RESPA is **DENIED**.

9                    **D.      Breach of Covenant of Good Faith and Fair Dealing.**

10          Under California law, a claim for breach of the implied covenant under contract law

11  is necessarily based on the existence of an underlying contractual relationship.  The covenant

12  requires that no party to the contract do anything which would deprive the others of the benefits

13  of the contract.  This duty, however, is "a supplement to an existing contract, and thus it does not

14  require parties to negotiate in good faith prior to any agreement."  *McClain v. Octagon Plaza,*

15  *LLC*, 159 Cal. App. 4th 784, 799 (2008).

16          Plaintiff alleges that Wells Fargo breached the implied covenant of good faith and fair

17  dealing in four ways:  (1) by offering a loan-modification payment plan that "did not provide

18  material relief" because it reduced monthly payments by at most $50; (2) by ignoring and

19  avoiding plaintiff's attempts to request a permanent loan modification in late 2009 and 2010,

20  through "tactics and roadblocks;" (3) by denying plaintiff's requests for permanent loan

21  modifications without providing an explanation or reason; and (4) by refusing to accept two

22  months of mortgage payments plaintiff allegedly tendered in 2009, under the terms of the loan

23  modification (First Amd. Compl. ¶¶ 103–107).

24          The first three sets of allegations stem from the way in which defendant handled

25  plaintiff's loan-modification process.  Wells Fargo cites *Carma Developers (Cal.), Inc. v.*

26  *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992), for the proposition that "it is universally

27  recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed

28  by the purposes and express terms of the contract."  Wells Fargo also argues that implied

                                              14

1    covenant "cannot impose substantive duties or limits on the contracting parties beyond those

2    incorporated in the specific terms of their agreement" (Br. 16, quoting *Agosta v. Astor*, 120 Cal.

3    App. 4th 596, 607 (Ct. App. 2004)).  Wells Fargo reasons that because plaintiff does not refer to

4    any terms of his loan that imply a duty for defendant to modify the loan or explain its denial of

5    a request, this claim must fail.  It is important to note that *Carma* emphasized express grants of

6    discretion were still subject to "the reasonable expectations of the parties," and thus, the fact that

7    conduct is permitted by the express terms of the contract is not in itself sufficient to avoid a

8    breach of implied covenant claim.  *Carma*, 2 Cal. 4th at 374.

9         Plaintiff alleges facts to support the conclusion that Wells Fargo exercised its discretion

10   in bad faith during plaintiff's loan-modification process.  He alleges defendants used tactics

11   such as "claiming Plaintiff did not comply with Defendant's requests to provide documentation

12   when in fact Plaintiff had, and transferring Plaintiff to different departments in order to avoid

13   Plaintiff's legitimate loan modification requests" (First Amd. Compl. ¶ 106).

14        Wells Fargo is correct that plaintiff's original loan did not impose a duty to approve a

15   loan modification, and the fact that plaintiff was not satisfied with the offered modification

16   does not amount to a breach of implied covenant claim.  The complaint also does not support

17   the inference that Wells Fargo had a duty to provide an explanation or reasons for denial of

18   the loan-modification request; plaintiff does not allege such conduct was outside the reasonable

19   expectations of the parties.  To the extent plaintiff's claim rests on these allegations, it

20   necessarily fails.

21        The fourth allegation, however, that defendant refused to accept plaintiff's payments

22   made under the terms of the loan modification, rests on a different underlying contract.

23   This implied covenant arises out of the loan-modification agreement, not the original loan.

24   Wells Fargo argues this claim should fail because the complaint does not specify whether the

25   agreement was oral or written — an oral agreement would allegedly be unenforceable — and

26   because the complaint does not describe or cite the terms of the modification with sufficient

27   detail to show the duty Wells Fargo allegedly breached (Reply Br. 5).  Viewing the allegations

28   in the light most favorable to plaintiff, this order finds that the allegations are sufficient.

United States District Court

For the Northern District of California

1    Plaintiff alleges "through *discussions* with WORLD SAVINGS, Plaintiff was informed that

2    he was to receive a modification that was under $1,900.00 per month, however, when Plaintiff

3    received the *actual figures*, the trial modification payments were $2,360.87 per month" (First

4    Amd. Compl. ¶ 20) (emphasis added).  This allegation, although vague, supports the inference

5    that plaintiff had a verbal conversation with defendant, followed by a written communication

6    specifying the modified payment rate (though different from what plaintiff expected).

7    Plaintiff cites the amount of the payments under the modification plan and alleges that he made

8    payments in accordance with that plan, but Wells Fargo rejected the payments (*id.* ¶¶ 20–21,

9    104).  These details are sufficient to state a claim that Wells Fargo breached an implied duty to

10   accept payments under the modification terms.

11          Lastly, Wells Fargo asserts that to the extent plaintiff's claim seeks to impose obligations

12   arising out of state law requirements, the claim is preempted by HOLA.  As an initial matter, this

13   order questions the applicability of HOLA where the alleged conduct occurred after Wachovia's

14   merger with Wells Fargo, a federally chartered national bank governed by the National Bank

15   Act preemption rules.  *See Rodriguez v. U.S. Bank Nat. Ass'n*, C 12-00989 WHA, 2012

16   WL 1996929, at *7 (N.D. Cal. Jun. 4, 2012).  Nevertheless, even assuming HOLA is applicable,

17   plaintiff's claims are not preempted for the following reason.  HOLA excludes preemption of

18   state contract, commercial, real property, tort, criminal, and other laws "to the extent that they

19   only incidentally affect . . . lending operations."  12 C.F.R. 560.2(c).  Here, plaintiff's state-law

20   contract claims only incidentally affect lending operations because plaintiff is challenging

21   defendant's general conduct of stalling, avoiding his requests and refusing to accept payments,

22   not the substance of its lending practices such as terms of credit, disclosures, or advertising.

23   Thus, HOLA does not preempt plaintiff's claim.

24          For the foregoing reasons, defendant's motion to dismiss the fourth claim is **DENIED**.

25                    **E.      Unfair and Deceptive Business Act Practices ("UDAP").**

26          Plaintiff's fifth claim alleges "Unfair and Deceptive Business Act Practices."

27   Wells Fargo notes that no particular statute is cited and the complaint is unclear as to which

28   law forms the basis of this alleged violation.  Plaintiff's initial complaint alleged violations of

                                                   16

1   California Business and Professions Code 17200 and UDAP as two separate claims (*see* Compl.

2   ¶¶ 123–49).  The amended complaint, however, omits the Section 17200 claim and does not

3   explicitly refer to Section 17200 in the UDAP claim.  As such, this order does not construe the

4   UDAP claim as based on Section 17200.  However, the UDAP claim resembles a Section 17200

5   claim, as it relies on similar types of allegations of "unlawful, unfair and fraudulent business

6   practice[s]" (*see* First Amd. Compl. ¶ 120).  The amended complaint appears to have narrowed

7   the claim by removing allegations related to the loan origination and limiting the remaining

8   allegations to the loan-modification negotiations and initiation of the foreclosure (*see id.*

9   ¶¶ 112–24).  If plaintiff intended the UDAP claim to rest on an alleged violation of Section

10  17200, he may request leave to file an amended complaint to plead the required elements of a

11  Section 17200 claim with greater specificity.  The UDAP claim in the first amended complaint

12  pleads insufficient factual matter to be reasonably construed as a Section 17200 claim.

13         In the alternative, Wells Fargo suggests that plaintiff's UDAP claim may be an attempt

14  to allege a violation of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1) (*see* Br. 17;

15  Reply Br. 7).  The operative complaint does not indicate or give rise to the inference that the

16  FTCA is the basis of the UDAP claim; moreover, the FTCA does not grant a private cause

17  of action.  *See* 15 U.S.C. 45(a)(2); *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981).

18  This order need not and does not decide whether a violation of the FTCA may form the basis of

19  a Section 17200 claim, because the pleadings are insufficiently detailed to state a Section 17200

20  claim.  As it appears plaintiff intended the UDAP claim to be separate from the formerly alleged

21  17200 claim, and because the Court cannot determine the basis of the UDAP claim in the

22  operative complaint, defendant's motion to dismiss plaintiff's UDAP claim is **GRANTED**.

23  Plaintiff may request leave to file an amended complaint to clarify which state or federal law

24  forms the basis for this claim.

25              **F.     Negligence**.

26         Plaintiff's sixth claim alleges that Wells Fargo is liable for negligence in the

27  loan-modification process.  Plaintiff alleges Wells Fargo delayed his modification; applied

28  inconsistent methods to modifications, foreclosure alternatives, and "following through on

17

their own agreements;" and made promises in relation to the loan modification without intending

to perform (First Amd. Compl. ¶¶ 128, 134, 136–38).  In sum, Wells Fargo allegedly failed

"(1) to comply with state consumer protection laws; (2) to properly service the loan; and

(3) to use consistent methods to determine modification approvals" (*id.* ¶ 135).

     *First*, Wells Fargo argues that plaintiff cannot state a negligence claim because Wells

Fargo, as a mere lender of money, owes no duty of care to plaintiff.  Defendant is correct that

"as a general rule, a financial institution owes no duty of care to a borrower when the

institution's involvement in the loan transaction does not exceed the scope of its conventional

role as a mere lender of money."  There are exceptions, however, and a financial institution may

be liable "when the lender actively participates in the financed enterprise beyond the domain of

the usual money lender."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089,

1096 (1991) (citations and quotation marks omitted).

     The undersigned has previously found a duty of care where

> the complaint allege[d] that defendant went beyond its role as a
> silent lender and loan servicer to offer an opportunity to plaintiffs
> for loan modification and to engage with them concerning the trial
> period plan.  Contrary to defendant, this is precisely "beyond the
> domain of a usual money lender." Plaintiffs' allegations
> constitute[d] sufficient active participation to create a duty of care
> to plaintiffs to support a claim for negligence.

*Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 WL 1134451, at *11 (N.D.

Cal. Mar. 28, 2011) (Alsup, J.).  So too here.  Plaintiff alleges Wells Fargo engaged with him to

consider his requests for loan modifications, which were ultimately denied despite Wells Fargo's

alleged willingness to negotiate and its representative's statement that "the loan modification

looks good" (First Amd. Compl. ¶¶ 136–38).  Plaintiff also alleges Wells Fargo offered a trial

loan modification and then refused to accept payments made according to its terms (*id.* ¶ 19–22).

These allegations show that Wells Fargo was acting "beyond the domain of a usual money

lender" and owed plaintiff a duty of care.

     Furthermore, the general rule is not absolute; California law uses a six-factor test to

determine whether a financial institution owes a borrower a duty of care:

> [1]  the extent to which the transaction was intended to affect the
> plaintiff, [2] the foreseeability of harm to him, [3] the degree of

18

**United States District Court**
For the Northern District of California

certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). Wells Fargo claims that this balancing test "is only relevant in the specific context where a borrower seeks to hold a financial institution responsible for the wrongs of a third party," and then cites to *Nymark* for the rule that liability arises when the lender "actively participates" in the enterprise beyond its usual lending role (Reply Br. 7–8). In fact, the *Nymark* court applied the *Biakanja* test to determine "whether a financial institution owes a duty of care to a borrower-client." 231 Cal. App. 3d at 1098.

Wells Fargo points to several district court decisions which characterize loan modification as a traditional money lending activity (Br. 9). Wells Fargo acknowledges *Ansanelli*, however, and other district courts have found lenders owed a duty of care in similar circumstances. *See, e.g.*, *Robinson v. Bank of Am.*, 12-CV-00494-RMW, 2012 WL 1932842, at \*7 (N.D. Cal. May 29, 2012) (Whyte, J.); *Chancellor v. OneWest Bank*, C 12-01068 LB, 2012 WL 1868750, at \*13–14 (N.D. Cal. May 22, 2012) (Beeler, J.); *Johnson v. HSBC Bank USA, Nat. Ass'n*, 3:11-CV-2091-JM-WVG, 2012 WL 928433 (S.D. Cal. Mar. 19, 2012). District courts have come out differently on this issue, and there is no Ninth Circuit precedent.

This order finds the six-factor test applicable and persuasive in showing Wells Fargo had a duty of care, because (1) the loan transaction was intended to affect plaintiff; (2) it was foreseeable that plaintiff could suffer harm such as foreclosure or credit damage; (3) while some injuries are uncertain, because the foreclosure sale has not yet occurred, plaintiff alleges emotional distress, credit damage, and costs related to Wells Fargo's demands for paperwork; (4) there is a close connection between the misconduct alleged in processing plaintiff's loan-modification request and the injury he suffered as a result of the delays and ultimate denial; (5) plaintiff alleges needless avoidance and intentional false promises that may sustain an inference of moral blameworthiness; and (6) there is a public policy aimed at preventing future harm to home loan borrowers (*see e.g.*, CAL. CIV. CODE § 2923.6 (encouraging lenders to offer loan modifications to borrowers to mitigate the home foreclosure crisis)).

1    *Second*, Wells Fargo argues TILA does not create a duty to review plaintiff for a loan

2    modification.  The complaint cites 15 U.S.C. 1639 as imposing a "duty to act within an industry

3    standard of care" with regard to modifications, alternatives to foreclosure, responding to

4    customer requests, maintaining land records, loan servicing, ensuring chain of title, and stopping

5    unlawful foreclosures (First Amd. Compl. ¶¶ 131–32).  Section 1639, the Home Ownership and

6    Equity Protection Act, amended TILA to provide specific protections for high-rate mortgages.

7    The statute requires certain disclosures and prohibits certain unfair terms, but does not create the

8    duties plaintiff alleges.  *See Kennedy v. Bank of Am., N.A.*, 12-CV-952 YGR, 2012 WL 1458196,

9    at *7–8 (N.D. Cal. Apr. 26, 2012) (Rogers, J.).  Insofar as the claim relies on Section 1639,

10   defendant's motion to dismiss is **GRANTED**.

11   *Third*, Wells Fargo contends that HOLA preempts the claim because it would impose

12   substantive duties on lenders with regard to the review and granting of loan modifications.

13   For the reasons stated in Section D of this order, plaintiff's allegations as to Wells Fargo's

14   procedural mishandling of his loan-modification requests and rejection of his payments only

15   incidentally affect lending operations and are not preempted.

16   Regardless of the exception for plaintiff's Section 1639 allegations, the complaint states

17   a claim for negligence, so defendant's motion as to this claim is otherwise **DENIED**.

18                          **G.    Negligent Misrepresentation**.

19   To state a negligent misrepresentation claim under California law, plaintiff must allege:

20   "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for

21   believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented,

22   (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund

23   LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (Ct. App. 2007).  Our court of

24   appeals has not yet decided whether a misrepresentation claim is subject to FRCP 9(b)'s

25   heightened pleading requirement or only FRCP 8's "short and plain statement" requirement,

26   but because the complaint fails to state a claim under the FRCP 8 standard, this order need not

27   reach the issue.

28

United States District Court

For the Northern District of California

1    Wells Fargo's argument that it owed no duty of care fails for the reasons stated in the

2    preceding section.  Nevertheless, plaintiff fails to allege sufficient facts of the misrepresentations

3    or the resulting damage.  The claim refers to "representations, fully set forth in this Complaint"

4    and incorporates the preceding paragraphs by reference, but the preceding text offers little

5    factual information about the alleged representations (see First Amd. Compl. ¶¶ 141, 143).

6          The only specific statement plaintiff attributes to Wells Fargo is that a representative said

7    "the loan modification looks good," despite allegedly not intending to give plaintiff a satisfactory

8    modification (*see id.* ¶ 136).  This was an expression of that representative's opinion, not fact.

9    *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308 (Ct. App.

10   2000) ("The law is quite clear that expressions of opinion are not generally treated as

11   representations of fact, and thus are not grounds for a misrepresentation cause of action.").

12         The complaint makes vague reference to defendant's "willing[ness] to negotiate with

13   plaintiff to refinance their [sic] property or provide a loan modification," "claim[s] plaintiff did

14   not comply with defendant's requests," and "promises about material facts without any intention

15   of performing them" but these are not sufficiently definite to support a claim (*see* First Amd.

16   Compl. ¶ 136).  Insofar as plaintiff alleges he was misled by the discussions with World Savings

17   that he would get a $1,900 modification when he actually received a $2,360.87 modification,

18   he does not allege how he relied on that verbal promise (*see id.* ¶ 20).  In fact, plaintiff

19   alleges that he made payments under the modified terms and continued pursuing further loan

20   modifications after the initial discussions, which shows that he did not rely on the initial

21   offer (*see id.* ¶¶ 21–22).

22         Moreover, the complaint does not sufficiently allege how the purported damages of loss

23   of equity, reduced credit scores, and related fees and costs arise out of reliance on the alleged

24   misrepresentations, because he does not allege he could have resolved the default had he known

25   Wells Fargo did not intend to give him a better loan-modification offer.

26         Defendant's motion to dismiss plaintiff's seventh claim is **GRANTED**.  Plaintiff may

27   request leave to file an amended complaint to allege the facts with greater specificity.

28

United States District Court

For the Northern District of California

1

### H.      Preliminary and Permanent Injunction.

2       Plaintiff asserts "preliminary and permanent injunction" as the "eighth cause of action"

3   against all defendants (*id.* ¶¶ 153–57).   Injunctive relief, however, is a remedy which must rely

4   upon underlying claims.   On this basis, defendant's motion to dismiss the injunctive relief

5   "claim" is **GRANTED**.   This is without prejudice to granting injunctive relief should such relief

6   be appropriate upon the success of any claim.

7

### I.      Quiet Title.

8       Plaintiff's ninth claim against all defendants is for quiet title (*id.* ¶¶ 158–64).

9   Wells Fargo contends that this claim because plaintiff has not offered to tender the full amount

10   of his debt, and plaintiff asserts that tender is not required because his claim attacks the validity

11   of the underlying debt.

12       Our court of appeals held, in an unpublished opinion:

13            It is generally true that, in California, an action to set aside a
             trustee's sale for irregularities in sale notice or procedure should
14            be accompanied by an offer to pay the full amount of the debt for
             which the property was security.   In the present case, however,
15            [plaintiff] has alleged that the purported trustee . . . had no interest
             in the subject property and thus lacked authorization to attempt, or
16            effect, a nonjudicial foreclosure.   If [plaintiff] were to prove this
             allegation, the foreclosure sale would be void under California
17            law.   The tender rule does not apply to a void, as opposed to a
             voidable, foreclosure sale.

18
*Martinez v. Am.'s Wholesale Lender*, 446 F. App'x 940, 943 (9th Cir. 2011) (internal quotation
19
marks and citations omitted).
20
21       Wells Fargo argues that the UDAP claim does not challenge the validity of the original

22   loan and that plaintiff states no other reason for excusing the tender requirement (Reply Br. 11).

23   Not so.   By alleging that the purported trustee, NDeX West, was not properly substituted as

24   trustee, had no interest in the subject property, and thus was not authorized to initiate a

25   non-judicial foreclosure when it recorded the notice of default, plaintiff alleges that the

26   foreclosure sale was void (*See* First Amd. Compl. ¶ 5).   As such, the tender rule does not apply.

27   Accordingly, defendants' motion to dismiss the ninth claim is **DENIED**.

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the second, fifth, seventh, and eighth claims is **GRANTED** and defendant's motion to dismiss the first, third, fourth, sixth, and ninth claims is **DENIED**. Plaintiff may seek leave to amend the fifth (UDAP) and seventh (negligent misrepresentation) claims and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion and plaintiff must plead his best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.


**IT IS SO ORDERED.**


Dated:  July 18, 2012.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE